

# The Attorney General of Texas

March 26, 1981

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Lias B. "Bubba" Steen
Commissioner
Texas Department of Labor and
  Standards
P. O. Box 12157
Austin, Texas  78711

Opinion No. MW-316

Re: Computation of gross receipts tax imposed under article 8501-1, V.T.C.S.

Dear Mr. Steen:

You state that boxing and wrestling promoters are questioning the Commission's method of assessing three percent of the total gross receipts of taxable athletic performances in satisfaction of the tax imposed by article 8501-1, section 11(a), V.T.C.S. It appears that the promoters feel that the tax should be calculated on the remainder of the total receipts after deducting therefrom the three percent tax. That is, since the ticket price necessarily includes the three percent tax, the tax of three percent should be figured only on the net amount of the receipts. This method, they claim, will avoid the erroneous imposition of a tax upon a tax.

Your question is as follows:

> Does the terminology 'gross receipts' as used in section 11 of article 8501 mean the sum total of all admission charges for a given event?

Article 8501-1, section 11(a), V.T.C.S., assesses and levies the tax in question by directing that within 72 hours after the termination of the taxable event, the Texas Department of Labor and Standards shall be furnished by the promoter thereof a verified report on a form furnished by the department showing the number of tickets sold, prices charged, and amount of <u>gross receipts obtained from the event</u>, and a cashier's check or money order made payable to the state of Texas in the amount of <u>three percent</u> of the <u>total gross receipts</u> of the event shall be attached to the verified report.

It is hard to conceive how the next foregoing referred to language of the statute could have been made more specific as to the subject matter of the tax. A thorough search of the authorities, foreign and domestic, that might have some bearing on the multiple term "total gross receipts," has revealed nothing as near in point as the commonly understood dictionary definition of the word "gross": "[t] he 'gross' earnings, receipts, or the like,

are the entire earnings, receipts, or the like, under consideration, without any deduction for expenses incurred." Websters New International Dictionary, 954 (1911).

It is obvious that the method of calcuation advanced by the promoters will produce a tax assessment of only 2.91% instead of the 3% levied by the statute on the "total gross receipts." In fact, this 3% tax in question cannot be a tax on a tax for the simple reason that it is not paid by the purchaser of the ticket. It is assessed against the promoter of the athletic event and is paid from his profits, unlike the sales tax which is paid by the purchaser. Many taxes similar to the boxing and wrestling tax have graced the state and federal governments for many years. Among these we will find the income tax and various types of gross receipts taxes, none of which seem to have ever been attacked on the grounds here raised by the boxing and wrestling promoters. The mixed beverage gross receipts tax is imposed on the permittee and paid from his total gross receipts without any deduction for the amount of his tax. The customer who purchases a mixed beverage pays no tax at all on such beverage, consequently there can be no tax on a tax in such case, as there cannot be in the instant case where the ticket purchaser also pays no tax. The income tax is paid from the total taxable income of the taxpayer without any deduction for the amount calculated for the tax. If such a deduction was provided by law, it would only serve to diminish the tax percentage specified in the tax levy. The legislature specified 3% of the total gross proceeds as the tax required by the Texas Boxing and Wrestling Act, not 2.91% as urged by the promoters.

We conclude that the term "gross receipts" as used in section 11(a) of article 8501-1, V.T.C.S., means the sum total of all admission charges for a given event.

## S U M M A R Y

The term "total gross receipts" denoting the subject matters of the three percent tax levied by article 8501-1, section 11(a), V.T.C.S., means the sum total of all admission charges to any taxable athletic performance, without any deduction for tax.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Robert Lattimore
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Robert Lattimore